**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**UNITED STATES of AMERICA,**

v.  Criminal No. 4:06cr19

**JOHN RAY,**

      **Defendant.**

## OPINION & ORDER

This matter was before the Court on Defendant's motion to continue his sentencing hearing, motion for a new trial, motion to seal, and motion for a downward departure. Docs. 22-25. The Court heard these motions on October 25, 2006, and ruled from the bench as to each.

### I. Factual & Procedural History[1]

On February 15, 2006, a federal grand jury returned a three-count Indictment against Defendant. Doc. 1. Counts One and Two charged Defendant with distribution of a mixture and substance containing cocaine base on or about January 7 and January 14, 2005, respectively, in violation of 21 U.S.C. § 841(a)(1). Count Three charged Defendant with distribution of 0.6 gram of cocaine on or about August 10, 2005, also in violation of 21 U.S.C. § 841(a). Defendant's first trial began on June 14, 2006, and ended in a mistrial on June 15, 2006. See Doc. 17 (summarizing the grounds for the mistrial).

---

[1] The factual and procedural history presented here is limited to events relevant to the present motions, and is not a comprehensive summary of the factual and procedural history in this matter.

Defendant's second jury trial began on July 6, 2006. The evidence against Defendant included the testimony of a confidential informant ("CI"), who was run by Detective William Nesbitt of the Newport News Police Department. The CI testified that on January 7 and January 14, 2005, he purchased cocaine base from Defendant and that on August 10, 2005, he purchased cocaine powder from Defendant (the "August 10 transaction"). The CI also testified to a January 27, 2005, purchase from Defendant of a substance which later tested negative for controlled substances (the "January 27 transaction").[2] Defendant was not charged for the alleged January 27 transaction. Detective Nesbitt testified that he did not witness the January transactions, but did observe the CI approach a vehicle to conduct the August 10 transaction. Officer Matt Hahn participated in a subsequent traffic stop of the vehicle and identified Defendant as a passenger. While awaiting his second trial, Defendant made incriminating statements to a cellmate concerning the January 27 and August 10 transactions. This cellmate testified at Defendant's second trial.

On July 7, 2006, the jury found Defendant guilty on Count Three and not guilty on Counts One and Two. Doc. 20. Defendant's sentencing hearing was scheduled for October 25, 2006. On October 18, 2006, Defendant objected to the proposed calculation of his advisory Sentencing Guidelines range, and on October 24, Defendant moved the Court to continue the his sentencing hearing, to grant him a new trial due to allegedly newly-discovered evidence, and to place the memorandum in support of his motion for a new trial under seal. Docs. 22-25.

---

[2] The January 7, 14, and 27, 2005 transactions will be collectively referred to as the "January transactions."

## II.  Motion for a Continuance

Defendant moved for a continuance of the sentencing hearing so that his potential filing of a notice of appeal would not cut short the Court's consideration of his motion for a new trial, as Federal Rule of Criminal Procedure 33(b)(1) prohibits a trial court from ruling on a motion for a new trial while an appeal is pending.  Doc. 23.  The United States was prepared to argue the motion for a new trial on short notice.  Defendant's counsel also being prepared, Defendant's counsel agreed the argue the motion for a new trial before the Court determined Defendant's sentence.  Defendant's motion for a continuance was therefore considered **WITHDRAWN**.

## III.  Motion to Seal

Defendant moved to seal his motion for a new trial (Doc. 25) and his memorandum in support (Doc. 26) due to the possible sensitivity of the statements therein regarding Detective Nesbitt.  Doc. 24.  While the Court commended Defendant's counsel for this exercise of caution, the Court determined that hearing the motion and memorandum under seal was unnecessary and **DENIED** Defendant's motion to seal.

## IV.  Motion for a New Trial

### A.  Legal Standard

A defendant moving for a new trial pursuant to Federal Rule of Criminal Procedure 33 based on newly discovered evidence must show that: (1) the evidence is, in fact, newly discovered; (2) the alleged facts would support an inference of diligence to discover the new evidence; (3) the new evidence relied upon is not merely cumulative or impeaching; (4) the new evidence is material to the issues involved; and (5) the new evidence is such, and of such a nature, that the new evidence would probably produce an acquittal at a new trial.  United States

v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001) (citation omitted).

### B. Alleged New Evidence

Defendant alleged that, subsequent to his trial, the Office of the Federal Public Defender ("FPD") developed new evidence "that would call into question the credibility of [Detective] Nesbitt." This evidence related to the FPD's review of another case involving Detective Nesbitt, United States v. Charles Pulliam, Docket No. 4:06cr33 (E.D. Va., docketed Mar. 14, 2006), and to Defendant's counsel's review of prior sworn statements made by Detective Nesbitt regarding Defendant's alleged participation in the January 27 and August 10 transactions.

### 1. Detective Nesbitt's Prior Sworn Statements

Defendant argued that Detective Nesbitt filed a state criminal complaint, under penalty of perjury, which "contain[ed] false information that was subsequently utilized to obtain arrest warrants [for Defendant] in state court." Id. at 4; see id. at Attachment 1 at 1-2. In the criminal complaint, filed with the Newport News General District Court on December 21, 2005, Detective Nesbitt listed all four transactions—including the January 27 transaction—as testing positive for controlled substances. Id. at Attachment 1 at 1-2. He did so despite the fact that the substance field-tested negative for controlled substances, id. at Attachment 1a, and that the Virginia Department of Forensic Science confirmed this negative result on October 12, 2005, id. at Attachment 1b. Defendant does not contend that Detective Nesbitt's criminal complaint was similarly incorrect as to the field and laboratory tests of the substances allegedly purchased from Defendant on January 7, January 14, and August 10, 2005. This allegedly newly-discovered evidence will be referred to herein as the "Criminal Complaint Evidence."

**2. <u>Pulliam</u> Matter**

Defendant argued that Detective Nesbitt's police reports regarding Mr. Pulliam's alleged criminal activity "had numerous discrepancies, including misinformation about phone calls that were allegedly made to Mr. Pulliam from the CI." Doc. 26 at 3. The CI in <u>Pulliam</u> ("<u>Pulliam</u> CI") was not the same CI who allegedly made the controlled purchases from Defendant. Detective Nesbitt reported that he and the <u>Pulliam</u> CI contacted Mr. Pulliam by a particular cell phone number to arrange controlled purchases. <u>Id.</u> at 1-2. The FPD discovered that cell phone records called into question the police reports' association of Mr. Pulliam with the cell phone number. <u>Id.</u> at 3-4. Defendant further states that "[t]he information gleaned from the defense investigation [in the <u>Pulliam</u> matter] was provided to the Assistant United States Attorney, who subsequently conducted further investigation of the case and ultimately dismissed all charges against Mr. Pulliam." <u>Id.</u> at 4. This allegedly newly-discovered evidence will be referred to herein as the "<u>Pulliam</u> Evidence."

**C. Discussion**

Defendant argued that "[i]t is obvious from the jury verdict that [the jurors] did not believe the CI," because the jury acquitted Defendant on the Counts for which the only evidence was the CI's uncorroborated testimony. <u>Id.</u> at 6. The Defendant therefore "believe[s] that the evidence provided by Detective Nesbitt was the deciding testimony" as to the August 10 transaction, and that wrongdoing by Detective Nesbitt, whose testimony corroborated the CI as to the August 10 transaction, "would have resulted in an acquittal." <u>Id.</u> Were the Court to conclude that the allegedly-new evidence was merely impeaching, Defendant alternatively argued that the allegedly-new evidence "is of such magnitude that a new trial should be

ordered." Id. at 6-7.

### 1. The Criminal Complaint Evidence

Prior to Defendant's trial, the United States provided Defendant with police reports prepared by Detective Nesbitt regarding the January and August 2005 transactions. On August 22, 2005, Detective Nesbitt prepared a report regarding the January 27 transaction, to which he attached the field and laboratory test results. Despite attaching these documents, his report of the January 27 transaction incorrectly stated that the January 27 substance tested positive for controlled substances. The inclusion of the contradictory test results with the report led the Court to **FIND** that Detective Nesbitt's mistake regarding the January 27 transaction and the repetition of the same mistake in the criminal complaint were careless mistakes, not intentional misrepresentations. Because Defendant was in possession of the police reports prior to trial, the Court **HELD** that the Criminal Complaint Evidence was not newly-discovered evidence.

The Court **HELD** that the Criminal Complaint Evidence was merely cumulative, was not material to Defendant's conviction on Count Three, and was merely impeaching. The Criminal Complaint Evidence was merely cumulative because it was evidence of a careless mistake that Detective Nesbitt had originally made in the police reports that were produced to Defendant. The evidence was not material, because Defendant was not convicted, let alone charged, for the alleged January 27 transaction. As the evidence was not material to the charges contained in the indictment, the evidence was also merely evidence that would merely have impeached Detective Nesbitt.[3]

---

[3] Defendant further alleged that Detective Nesbitt provided incorrect sworn statements, in support of an arrest warrant, that the August 10 transaction took place "upon the property of a public or private elementary, secondary, or post secondary school." Id. at 4-5 & Attachment 4.

The Court further **HELD** that Criminal Complaint Evidence would probably not produce an acquittal on Count Three at a new trial. The jury's finding that the United States failed to meet its burden of proof on Counts One and Two did not preclude the jury from considering the CI's testimony regarding the conduct charged under Count Three. The jury also heard corroborating testimony as to the August 10 transaction from Officer Hahn and Defendant's former cellmate. Regarding the August 10 transaction, Detective Nesbitt testified at trial that the CI used a cell phone to set up the controlled purchase. Detective Nesbitt described a vehicle that the CI allegedly approached to conduct the August 10 transaction, and Detective Nesbitt further testified that he reported this vehicle to uniformed officers who then conducted a traffic stop. Officer Hahn testified that he and his partner performed this traffic stop and identified Defendant as a passenger in the vehicle. The former cellmate testified to his conversations with Defendant about Defendant's case. The cellmate testified to a conversation in which Defendant said the CI called Defendant to set up the August 10 transaction and that Defendant had met the CI at the location where the August 10 transaction allegedly took place. Officer Hahn and the cellmate corroborated Detective Nesbitt and the CI's testimony regarding the August 10 transaction. For these reasons, and because the new evidence was cumulative, immaterial, and impeaching, the Court **HELD** that an acquittal would not be probable at a new trial.

Defendant argued that even if the evidence were merely impeaching, the new evidence "is of such a magnitude that a new trial should be ordered." Doc. 26 at 7; see id. at 5 (citing

---

While this particular new evidence was not addressed at the October 25, 2005, hearing, the Court hereby **HOLDS** that this further mistake by Detective Nesbitt was merely impeaching and is immaterial to Defendant's conviction on Count Three, as Defendant was not charged with distributing controlled substances in or near schools or colleges.

Mesarosh v. United States, 352 U.S. 1 (1956)).  The Court disagreed.  The evidence, as discussed herein, was not material to Defendant's conviction on Count Three and would not have probably resulted in Defendant's acquittal on Count Three.  Under these circumstances, the Court **HELD** that the impeaching and cumulative Criminal Complaint Evidence was not of such a magnitude that would entitle Defendant to a new trial.  The Court accordingly **DENIED** Defendant a new trial based on the Criminal Complaint Evidence.

### 2.  The Pulliam Evidence

The Court also **HELD** that Defendant's assertions regarding the Pulliam Evidence were too vague to form the basis for granting Defendant a new trial.  Defendant alleged "numerous discrepancies" in Detective Nesbitt's police reports in the Pulliam matter.  Doc. 26 at 3.  Defendant elaborated only by stating that Detective Nesbitt's police reports associated Mr. Pulliam with a cell phone number used to set up controlled purchases, and that cell phone records showed the phone to be registered to another individual, whom Defendant's counsel believed to have made the controlled purchases.  Id.  Additionally, Defendant implied that the inaccuracies in Detective Nesbitt's police report led to the dismissal of the charges against Mr. Pulliam, but also stated that the charges were dismissed upon "further investigation of the case" by the United States without further elaboration.  Id. at 4.

Furthermore, the Court **HELD** that to the extent to which Detective Nesbitt's police reports contained inaccuracies, this evidence was merely cumulative of the Criminal Complaint Evidence of Detective Nesbitt's careless mistakes.  The Court **HELD** that this evidence was also merely impeaching, because the evidence did not show that Defendant was innocent of the August 10 transaction as-charged.  The Court **FOUND** that the evidence would not have

probably resulted in an acquittal for the same reasons discussed above regarding the Criminal Complaint Evidence. This is especially so regarding the <u>Pulliam</u> cell phone evidence, because Defendant told his cellmate, while awaiting his second trial, that the CI had called Defendant to arrange the transactions. The Court **HELD** that such vague and cumulative evidence, which would not have probably resulted in an acquittal at a new trial, is not "of such a magnitude that a new trial should be ordered." <u>See</u> Doc. 26 at 7. The Court accordingly **DENIED** Defendant a new trial based on the <u>Pulliam</u> Evidence.

### D. Summary

The Court **HELD** that the Criminal Complaint Evidence was cumulative, immaterial, impeaching, not newly discovered, and not probable to result in an acquittal on Count Three at a new trial. The Court further **HELD** that the <u>Pulliam</u> Evidence was cumulative, impeaching, not probable to result in an acquittal on Count Three at a new trial, and too vague to form a basis for granting Defendant a new trial. Defendant was therefore not entitled to a new trial and the Court **DENIED** Defendant's motion.

### V. Downward Departure

Defendant's Presentence Investigation Report ("PSR") assigned Defendant a criminal history category of VI and a total offense level of thirty-two (32). PSR at ¶¶ 76 & 77. The total offense level was determined by Defendant's status as a career offender; otherwise, Defendant's offense level would have been twenty-six (26). <u>See</u> U.S.S.G. § 4B1.1 & 21 U.S.C. § 841(b)(1)(C). As Defendant faced a statutory maximum term of imprisonment of twenty (20) years, the advisory Guidelines recommended a sentencing range of two hundred ten (210) to two

hundred forty (240) months' imprisonment.[4]

Defendant moved the Court for a downward departure based upon Defendant's age and physical condition. Doc. 22 at 3-4; see U.S.S.G. §§ 5H1.1 & 5H1.4. Before the Court could apply a downward departure, the Court first had to consider whether or not the advisory Guidelines range serves the factors listed in 18 U.S.C. § 3553(a). See United States v. Hampton, 441 F.3d 284, 287 (4th Cir. 2006). The Court **HELD** that the advisory Guidelines range did not serve the factors listed in Section 3553(a): the advisory range overstated the nature and circumstances of Defendant's present offense, which is distributing 0.6 gram of powder cocaine, see § 3553(a)(1); while the career offender enhancement takes Defendant's criminal history into account, the advisory range was excessive considering Defendant's personal characteristics (i.e., his age and physical condition), see id.; the advisory range overstated the seriousness of the offense, see § 3553(a)(2)(A); and the advisory range was greater than necessary to promote respect for the law, to provide just punishment for the offense, to adequately deter criminal conduct, and to protect the public from further crimes, see § 3553(a)(2)(A)-(C).

As the Court **HELD** that the advisory Guidelines range did not serve the Section 3553(a)

---

[4] Defendant objected to the application of the career offender enhancement was inappropriate due to the age of his prior convictions and the small quantities involved. Doc. 22 at 1-3. The Court **HELD** that the application of the career offender enhancement was proper because the existence of the prior convictions was not disputed, and several controlled substances convictions were too old to be included in the determination of Defendant's criminal history category. The proper application of the career offender enhancement mooted Defendant's remaining objections to the PSR. Defendant objected to the calculation of his criminal history category and to the PSR's attribution to Defendant of crack cocaine, even though Defendant was only convicted for selling powder cocaine. Id. at 1. Career offenders, however, automatically receive a criminal history of VI, see U.S.S.G. § 4B1.1(b), and a career offender's minimum total offense level on a conviction for distributing only 0.6 gram of powder cocaine—which carries a statutory maximum term of imprisonment of twenty (20) years—is thirty-two (32), see 21 U.S.C. § 841(b)(1)(C) & U.S.S.G. § 4B1.1(c).

factors, the Court then considered whether a traditional downward departure would be warranted. See Hampton at 287. Although age and physical condition are traditionally "discouraged" factors, see id. at 287 n.1, departures based on a "discouraged" factor are appropriate when "the factor is present to an exceptional degree or [the case is] in some other way . . . different from the ordinary case where the factor is present," Koon v. United States, 518 U.S. 81, 95 (1996). Defendant is sixty years of age and medical records from 2004 and 2005 show that Defendant suffers from significant health problems. These include multiple areas of degenerative arthritis, chronic fatigue, gout, possible narcolepsy, and chronic allergic sinusitis. PSR at ¶ 52. In April 2004 Defendant was diagnosed with cardiac enlargement and a degenerative change in both of his knees. Id. The Court **FOUND** that several of these conditions are present to an exceptional degree. Cf. Koon at 95. Furthermore, considering Defendant's age and health together, the Court considered application of the advisory guidelines range to constitute a life sentence for distributing 0.6 gram of powder cocaine. The Court **FOUND** that such disproportionate punishment made this case different from the ordinary case in which age and physical condition considerations are present. Cf. id. The Court **HELD** that a downward departure due to the Defendant's age and physical condition was therefore warranted.

The Court **SENTENCED** Defendant to one hundred eight (108) month's imprisonment and three (3) years' supervised release. The Court **HELD** that this sentence reflected the nature, circumstances, and seriousness of the offense; reflected Defendant's personal characteristics; promoted respect for the law; provided just punishment for the offense; afforded adequate deterrence to criminal conduct; and protected the public. See 18 U.S.C. § 3553(a).

## VI.  Conclusion

For the reasons stated herein, Defendant's motion for a continuance (Doc. 23) was considered **WITHDRAWN**, Defendant's motion to seal (Doc. 24) was **DENIED**, Defendant's motion for a new trial (Doc. 25) was **DENIED**, and Defendant's motion for a downward departure (Doc. 22) was **GRANTED**.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to counsel of record.

It is so **ORDERED**.

                                                                      /s/
                                        HENRY COKE MORGAN, JR.
                                      SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 14, 2006